Mr. Christopher McKinney. Thank you, your honor, and may it please the courts. That might be adjustable given your height. There's a button. There you go. Now you're looking not quite as tall. But more audible. But more audible. Okay, that's a good thing. And don't be a bit afraid to speak up so that every last person in the room can hear you. My client, Rodney Washington, is the appellant. Mr. Washington began working at the Kansas City Aviation Overhaul Base in 1974. At the time he was an employee of TWA. He worked with the airline until 2002 when American took over. He stayed with American until 2007 and thereafter. But in 2007 he applied for a promotion. He had been a mechanic, commercial aviation mechanic. He was applying for a position as a machinist, commercial aviation machinist. He's a union worker so they went through a bidding period. There was one test that determined the qualification for being a commercial machinist at the time. It was called the MPG-1 examination. After going through the bidding process, applicants would take the MPG-1 examination. Mr. Washington was determined by American Airlines to have had failed the examination and thus he did not get the promotion. This is a failure to promote case. There's no direct evidence of discrimination. Obviously then we're dealing with McDonnell Douglas case and that framework. The court below found that there was a prima facie case of discrimination but that my client could not meet his burden on showing that American Airlines proffered non-discriminatory reason for failure to promote, which again is the MPG-1 examination, was a pretext for discrimination. Have you got anything to suggest that this examiner was biased based on race or? There is no direct evidence of that. The evidence here goes, all goes to the MPG-1 examination though. The way that it was scheduled, the way that it was administered during the examination. I got all that. I understand you don't like, there's an argument that this examiner was either not as capable as he should have been or misunderstood the test or wasn't fairly failing both of the people whom he tested or at least your man. But how does that relate to there's no direct. Even circumstantially, how does there, other than the fact that your client is of a certain race, I mean what is there to suggest that the examiner was motivated? I don't think you can take any particular bit of evidence here that's in the record and say that this is certainly a case that deserves trial because here's indicia or an inference of discrimination. I think you have to look at each bit as a whole and at that point determine that there are triable facts, that there are material facts that could go to a jury in which a jury could find for my client. Directly to your point, I think the the identity of the tester goes to the subjectivity of the examination, the MPG-1, but the same tester failed a Caucasian didn't he? He did. Mr. Rupert, who tested sixth, he had no experience as a commercial machinist. Mr. Washington had experience and very important to that, to Mr. Rupert's case, the person that was failed by the same examiner, he didn't make it to the practical portion of the he was asked a question and the examination was failed. He didn't last very long in the examination room, so I think a distinction could be made there between the two. He was failed, he was Caucasian, but their experience is significantly different. Out of the six, my client was the only African-American to test and he was failed by Mr. Howard, the tester who came in from out of town. The reason I think the identity of the tester is important and it goes to subjectivity is because the first four applicants were familiar with, to some extent, with their tester because he was employed in Kansas City with the other people. Presumably they know what kind of work he he wants to see when they're machining a part in this instance or really for whatever task he's requiring. My client was failed when he was asked the machine of bushing. He was given a diagram of the bushing, specified tolerances were given, but this wasn't a situation where he presented the parts and they said no, this isn't proper. He was failed while he was making it because Mr. Howard said you're doing it the wrong way, not because of a result. I'd like to reserve the rest of my time unless there are any questions. You may do so. We will hear then next from the lawyer for the appellee, Sarah Welsh. I'm not quite as tall. May it please the court. My name is Sarah Welsh. I represent the appellee American Airlines in this case. The district court summary judgment should be affirmed because Mr. Washington has failed to create any factor, much less a determining factor in American Airlines' decision not to promote him. It is undisputed that Mr. Washington could not be promoted without passing the MPG-1 exam and it is undisputed that he was not given a passing grade on that exam. His failure to be promoted was an automatic result of his failure to pass the MPG-1 exam. Mr. Washington's claim is that there was discrimination based on race in this test. Judge Colleton, you asked whether there was anything to suggest the examiner was biased and there was not. There is no direct evidence. There is no circumstantial evidence. There is no evidence. In support of his discrimination claim, Mr. Washington points to a variety of things he believes were unfair about the scheduling and administration of his exam. But as the court made clear in numerous cases, including the Bureley v. City of O'Fallon case in 2012, and that was at 695 F. 3rd 807, absent a showing that race played some role in the decision not to promote him, summary judgment was properly granted. And there is no evidence here that race played any role at all in Mr. Washington's failure to pass this qualifying test. Appellant's arguments here are similar to the appellant's arguments in the Bone v. G4S Youth Services case, which was another 2012 case. That was at 686 F. 3rd 948. The arguments are similar in that Mr. Washington challenges the employer's articulated legitimate nondiscriminatory reason and then attempts also to show pretext. But both of those arguments in this case should be rejected for the same reason they were rejected in the Bone case. In Bone, the employee claimed the employer had not articulated a legitimate nondiscriminatory reason for terminating her employment because there were unresolved questions about whether the employer was correct in its judgment that the employee had engaged in misconduct. And this court made very clear that it is not the court's role to second-guess the employer's personnel decisions absent some actual evidence of discrimination. The same rationale applies here. Mr. Washington attacks the legitimacy of American Airlines' nondiscriminatory reason, which was his failure to pass the MPG-1 exam, because he contends that the tester got it wrong. He says, no, I did the procedure properly and I should have passed the test. The tester said, no, you were not demonstrating proper machining procedures, and so he failed him on the test. But as was the case in Bone, Mr. Washington has not produced any evidence, direct, circumstantial, any evidence at all, to show that the tester, Mr. Howard, was not acting in good faith when he reached his conclusion that Mr. Washington was not demonstrating proper machining procedures. Whether Mr. Howard was right or wrong about that is immaterial, because there's no evidence to suggest that he was not acting in good faith in making that assessment. And more importantly, there's no evidence to suggest that he had any racial bias in making that assessment. Now, Mr. Washington claims that the scheduling and administration of the test was unfair, but the burden at the second step of McDonnell Douglas in articulating the legitimate nondiscriminatory reason is not for American Airlines to show that it was fair. How is it that this tester was assigned to Washington? Does the record explain that? It does. This particular tester ended up testing two employees, because the tester who was at the Kansas City overhaul base was unavailable at that particular time. And so they had Mr. Howard come in and test two people in that week. So he tested Mr. Washington and a Caucasian employee within a two-day period. And it is extremely significant in this case that Mr. Howard failed both of those examinees. He failed Mr. Washington, and he also failed the Caucasian employee. Well, Washington says the other man was not experienced and less qualified, so it figures that he would fail. There's actually no evidence in the record regarding the other Mr. Ruppert's qualifications. Mr. Washington speculates that Mr. Ruppert did not have qualifications, but he admitted in his deposition he doesn't actually know that. Mr. Washington felt it is unquestionable. Mr. Washington felt he was the most qualified person and should have passed this exam, and he felt he was far more qualified than his examiner. But the reality is he didn't pass the test, and there's simply no evidence to suggest that Mr. Howard was assigned to him for a racially discriminatory reason or that Mr. Howard failed him for a racially discriminatory reason. This claim of unfairness carries over to the appellant's claim that he can show pretext in this case. But as the district court held, regardless of what evidence Mr. Washington believes supports his unfairness argument, there's no evidence that the real reason for American Airlines' refusal to promote him was his race, and that is what he must show. In the time I have remaining, I do not have the time to address all of the various nuances of the unfairness that Mr. Washington claims in connection with this test. But the bottom line is that appellant acknowledges, and he acknowledges this in his brief, and he cites the Barber case, that he must point to enough admissible evidence to raise genuine doubt as to the legitimacy of defendant's motives. And the problem here is that all of his complaints about the scheduling of the testing and the testing procedures go not to the legitimacy of American Airlines' motives, but to the legitimacy of the test itself. And there's just no evidence that his complaints about the test itself have anything at all to do with race. And so there's no evidence that race was a contributing factor, as I said earlier, or even a determinative factor in his failure to be promoted. I think it's important to note, with respect to his claim about scheduling, and again, in the time I have allotted, I don't have time to address each of his complaints about the scheduling and administration, but it seems that his chief complaint about the scheduling of the test was that he was the first person to bid and wasn't the first person tested. But there's no rule, there's no procedure, there's nothing that says the first person to bid must be the first person tested. And in fact, if his theory was correct, then Mr. Johnston, who was also the person who bid with Mr. Washington in the first round of bidding, there were two rounds of bidding for this position, there were actually six openings in total, if Mr. Washington's theory is correct, then Mr. Johnston, who was the only other person who bid initially with Mr. Washington, he would have been the first person tested. If the theory is American Airlines skipped over Mr. Washington because of his race, Mr. Johnston would have been first. Mr. Johnston wasn't first, he was fourth. So there's simply no possible inference that you can draw from this scheduling that this was somehow intentional race discrimination. And this gets to the heart of the matter, which is that Mr. Washington simply did not like his tester, he did not think his tester was qualified, and he thought he should have passed the test. But this court has held repeatedly that that is not for the court to go back and determine after the fact. The only thing for the court to determine is whether there was any racial discrimination in play here, and there's simply no evidence that there was. As an aside, Mr. Washington's theory that he would have passed the test had he been tested by the other tester I think is flawed, because the other tester, although he did pass four examinees in the first wave, when the second wave of testing came around in October, he failed three examinees, two Caucasian and one Hispanic examinee. So again, there's simply no evidence to support any claim of race discrimination in this case, and for that reason we would ask the court to affirm the summary judgment of the district court. Thank you. Very well. And does Mr. Appel, let's see. We're dealing here with Christopher McKinney, right? Yes, Your Honor. And you have some time for rebuttal, and it looks like they've punched up three minutes, 40 seconds on the clock. Thank you, Your Honor. Thank you, Your Honor. I think the issue of scheduling the test can go to motive. Mr. Washington was the first to bid. He said he was immediately available. He was tested approximately 17 days later, the fifth out of six employees in the first bidding period. Also important is that American Airlines refers to a QAM procedures manual that sets up the MPG-1 as the test for this kind of promotion. It says that the examinations will be scheduled for the employees by their employer. Later, American Airlines says that the test would be scheduled via mutual convenience, reported availability, or cooperatively, which certainly wasn't the case with Mr. Washington. He wanted to be tested immediately, and he wasn't. There wasn't any cooperation involved. So, in this instance, American set up a rule, and it doesn't appear that they followed their own rule. Within the MPG-1 examination itself, I think it's worth noting that my client did request a union witness at the outset, and he wasn't given one. American Airlines says that essentially their argument to that is, well, he should have been more persistent. However, the fact remains that there was a tester that he had never met before. He wasn't allowed to have a union witness during that time period. Then he continued with the examination. While certainly there isn't going to be any direct evidence that the particular decision based on machining a part and to the tester's knowledge of machining a part, whether he just made that decision based on race, that evidence isn't there, but I wouldn't expect this court to decide the case based on one particular issue like that. This is a fact-intensive case, and each of the factual issues have to be viewed as a whole in order for the court to conclude that not only is there a prima facie case, but those same facts that go to a prima facie case show that there's pretext. I think this case is distinguishable from some, for instance, Torgerson, because everything points to the MPG-1 examination in this case. All the facts that are disputed go towards the reason that American Airlines has proffered as the nondiscriminatory answer for nonpromotion. Everything points to that. If the reason they're giving, if everything surrounding this supposedly objective examination, if there are questions surrounding it on all sides from scheduling to the identity of the tester to administration, I think the briefing, the brief shows and the record shows that there are facts that remain to determine why Mr. Washington was treated differently in this case and it's up for a jury to decide whether or not the reason he was treated differently was because of his race. Thank you all for your time today. Thank you for your appearance here as well as your worthy adversary. We will take this case under advisement and render a decision in due course, and we thank you for both of your attendances here this morning. Is that—